Case No. 17-1365 and 17-1523, Shou-Yung Tang v. Citizens Bank et al. Mr. Herrick, good morning. Good morning. Thank you, Your Honor, and may it please the Court. I am Robert Herrick. I'm here for Shou-Yung Tang. Ms. Tang filed a sexual harassment suit against citizens and others. Counsel, we actually do read the briefs very carefully. I believe there are two issues before the Court. Could you get to those, please? So while making it clear that we were pursuing a quid pro quo theory of sexual harassment, we requested that Judge Young actually give an instruction on that. You provided him with no such instruction. It was defense counsel who provided the two separate instructions. Right. What I would suggest, Your Honor, is that if a party basically tells the trial court just what theory he wishes to pursue, and then defense counsel gives an accurate instruction, and there's no objection from the part of the plaintiff, I think she is basically assented to giving that instruction. In fact, I think it constitutes as requesting it. Is there any case that says that? Excuse me? Is there any case to support your assertion? I don't have a specific case that would support that. And then your problems continued because when, after the instruction was given, you did say to the judge, gee, you didn't give a quid pro quo instruction per se, and the judge said, well, I think you benefited from the instruction I gave. And were you trial counsel? I was not trial counsel. Okay. Trial counsel said, well, okay, Your Honor. That was the time to assert a Rule 51 objection to the instruction, and no such objection was asserted. Rather, it was, okay, Your Honor, I'm fine with that. Well, I would suggest it was a little bit different, Your Honor. And I think if you look at the transcript in context, what trial counsel did say was, fair enough, Your Honor. And I take that to mean, frankly, I don't think I'm going to change your mind on this, Your Honor. How does that comply with Rule 51? Because I think by really pointing out the fact that there was an omitted instruction, I think counsel had adequately informed the court that what we were looking for was the instruction itself. Doesn't fair enough sound like a confession of sufficiency and hence a waiver of the objection? I do not think so, Your Honor. And I say that for two reasons. One is that this court does require that any withdrawal of an objection be very explicit, and I don't think that's particularly explicit. I think beyond that. Well, we don't require that the withdrawal use that word. There is no formula. And fair enough sounds to me like saying what you have just reminded me that you've done sounds okay to me, and that seems to be withdrawal language to me. Whereas I think another understanding of that expression can simply be we will agree to disagree, Your Honor. And I think it's important to point out that the next. That's not a fair reading of it, and it also doesn't comply with Rule 51. What I would say, Your Honor, is that if we look to the very next objection, what the counsel for Mustang does is she essentially points out once again her concern that this substantive issue is not being properly raised. So what she says is that she's concerned that the jury has not been adequately apprised, that punishment for rebuffing Macri's advances would be sufficient for liability. But I had trouble actually. I mean counsel was given a challenge because the judge apparently didn't give written instructions to counsel and it was kind of on the fly so you really had to be on your toes. But when you ended up reading the instructions as a whole, didn't the judge in fact instruct precisely what you just said that if the fellow put in motion or did something that started and led to her getting punished because she refused him, that that was unlawful retaliation? He didn't use the word quid pro quo, but who cares? My take on it was that there are basically three possible routes towards liability here. One would be to say that Mustang engaged in a protected activity and was retaliated against as a result. The other, the hostile work environment. But then there's a third avenue here and the third avenue is essentially that she was terminated not because she engaged in a protected activity, filing a complaint, but rather that she rebuffed the advances of Macri. And wasn't that in fact that third avenue covered when she said, if you believe that Macri propositioned her was rejected and then he retaliated against her and got other people in on it knowingly or unknowingly and that was what occasioned her to be fired. The law forbids that. The judge then called that retaliation, but that is precisely the third point that you just put there. It seems to be to be in substance of covered. But my concern is that that is not the law of retaliation. Sure, the judge got the label wrong, but who cares? He could have called it schmaliation. He still would have got a verdict. I mean, I think as we stand here, there are two parties, none of whom is basically defending the jury instructions here. These are jury instructions that frankly, if you were to give them to a class of 1Ls and ask them to give a brief overview of the law of sexual harassment, they would have no chance. Why didn't you propose your own instruction on quid pro quo? Because we were satisfied with the quid pro quo instruction. No, no, no. Why didn't you propose your own instructions on quid pro quo? It would have been a clearer signal to the court that you considered that an entirely separate theory to be separately instructed. I don't think the court was under any illusion about what our theory was, Your Honor, where you specifically said we are pursuing this as a hostile work environment and as a quid pro quo claim. I thought much of the skirmishing was over whether there was adequate evidence to get your hostile work environment claim before the jury. The defense took the position there wasn't. Bill Young, the trial judge, ruled against them on that point, and then he sort of merged the two concepts. Right, but that merger of the concepts I think left the jury at a loss when it came to trying to actually analyze this in a systematic way. But you made an example of a question a juror might have asked of another juror that the instructions would not have furnished the answer on that would be relevant to your quid pro quo. So at a certain point in the instructions, the judge said, if you believe all of Ms. Tain's testimony, you could find that that's sexual harassment. I think a juror could ask a fellow juror, well, if it could support finding of sexual harassment, what is the guiding principle? How do we get from a finding that it does support it to a finding that it does not support it? And I don't think that winds up being the answer. Now you have another point. Now you're talking about sexual harassment. I thought the quid pro quo was your problem. I thought your concern was that if one juror turned to the other and said, suppose it wasn't harassment, which we just heard about, but suppose she got fired or a negative review because she wouldn't date the guy. And it seems to me the juror would have said, well, Judge Young told us that if you believe that he propositioned her and was rejected, and that's why bad things happened to her, then she wins. Isn't that your quid pro quo? It's not. How is it different? Well, here is an area where appellants are very often in a situation where what we have to do is we're accused of cherry-picking language from the jury instructions. I think this court has to look at the jury instructions as a whole. And what I'm suggesting is that the jury instructions as a whole left the jury at a total loss when it came to actually analyzing the case. Yes, that's exactly the point Judge Kayada is pursuing. He wants you to look at the instructions as a whole. And he says, in essence, you weren't harmed, you were benefited. And he's been trying to extract from you an example of how you were harmed. I think the example that I just gave was responsive to that question. The harassment example? Yes. Yeah, unless there are no further questions. No, thank you. Thank you. Good morning, Your Honors, and may it please the Court. My name is Mark Batten. I was trial counsel below and represent Citizens Bank today. I'll be brief, but I just wanted to address one point that came up in the prior argument, which is that the instructions as delivered, putting aside the question of waiver or forfeiture, as to which we're content to rely on the brief, the instructions that were actually given were even more favorable to Ms. Tang than the instructions for which they argue now on appeal. Because they didn't have a causal requirement? That's correct, Your Honor. The court instructed the jury repeatedly, beginning at page 1277 of the record, that if the jury found that they made a proposition, that was the end of the analysis. The damages were to be awarded. The court says that at page 1277, says it again on the next page, and then on page 1280. In a very pithy way, Judge Young instructed them, if you find that a proposition was made, then you check that first box and tell me how much damage is to award. So the judge essentially gave a stub instruction that was half of a quid pro quo, requiring no adverse consequences to Ms. Tang for refusal, and was not even a complete hostile work environment instruction because it didn't impose any requirement that the sexual conduct be severe and pervasive. So Ms. Tang benefited enormously from the instruction that was given. The defense objected to the court's conclusion that sexual harassment, that liability could be found just based on a proposition. We objected to that extensively at the pre-charge conference. You'll see that at pages 1213 to 133. Had an extensive colloquy with the judge about that, who said, I don't think that's the law. I think a proposition alone is enough. And he then so charged the jury. That circled back around again at another point that has not yet been discussed this morning, which is when the jury came back out with this question and said we need a definition of sexual harassment. And the judge said again to the jury, if there's a proposition, that's it. That's harassment. And neither party objected to that description. So the instruction that was given, even if erroneous, was erroneous extremely in Ms. Tang's favor. And so even if this court were to find that an objection were properly preserved, which we dispute, there is no error other than a harmless one in the instruction that was given, given the verdict. And just to amplify on that a little bit, as this case was tried, this was the gating issue to liability for all of the theories that were presented and all of the claims that were presented. Ms. Tang's theory at trial was Mackley repeatedly, repeatedly propositioned me for sex. Everything he said to me, every criticism he gave me about my performance was intended to get me into bed with him. And the defense said, objectively viewed, all the evidence that you've heard was innocuous and had no sexual content whatsoever. Ms. Tang just misunderstood, misinterpreted. The jury clearly accepted that theory because the only question that was presented to them was their proposition. If there's a proposition, find liability. The jury said, no liability. So there was no proposition. And that's the end of a quid pro quo case. That's the end of a hostile work environment case. It's the end of a retaliation case. You know, one of the things that courts of appeals do is they try to provide some guidance to district courts about what they should do and what they shouldn't do. And we try to keep the lines straight in the different doctrinal areas, including especially in Title VII. There are a number of different ways to resolve this case. But it's pretty clear that these instructions were not to the T and that we don't actually want accountants' instructions like this. So in the end, what is the argument of yours that you think we should be pursuing? Well, I think there are two different answers to that question, Your Honor. The answer that the defense would probably most recommend would be a finding of forfeiture or waiver. But to the court's point about providing more guidance to the lower court about the content of instructions, it's clear that the instructions here, as I've said, did not impose the burden on Ms. Tang that they should have because they didn't include all of the elements that are required for either a quid pro quo or a hostile work environment instruction. And so that error operated to the plaintiff's benefit and so does not begin to support reversal of the verdict. But a clarification on that point, I'm sure, would be welcome. Well, that answers the question. Yes, it does. Thank you. If there are no other questions, I would request the judgment be affirmed. Okay.